BOYD and wife *vs.* THE HUDSON CITY ACADEMICAL
SOCIETY.

1. Inadequacy of price alone, unless it be so gross as to lead to the pre-
sumption of fraud, is not a sufficient reason for setting aside a sheriff's
sale.

2. A difference of $4000 between a bid of $11,000 made at the first sale,
and $7000 made at a second and final sale of the same property, is not
such as of itself to lead to the conclusion that the price at which the
property was sold was grossly inadequate; and the less so, when even if
the bid of $11,000 was intended as a bona fide bid, no one claimed the
benefit of it.

3. Such sale will not be set aside at the instance of a holder of a second
mortgage, on the ground of inadequacy of price, in the absence of evi-
dence to show that the property was sacrificed, and that a higher price
could be got for it upon a re-sale.

4. Nor will the ground of surprise avail him, when he paid no attention
whatever to the proceedings in the suit, or to the first sale; and
does not even intimate that he would have attended the second sale had
he known of it, or that he ever intended to bid on the property at all.

Boyd *v.* Hudson City Academical Society.

On motion (on petition and depositions) to set aside sheriff's sale.

*Mr. McGill,* for the petitioner.

*Mr. J. Dixon,* for the complainants.

*Mr. Lippincott,* for the purchaser.

THE CHANCELLOR.

Under the execution issued in this cause, the mortgaged premises were advertised to be sold on a day in February, 1873. That advertisement being defective, the sheriff re-advertised for the 1st day of May, then next. Several adjournments were made from time to time, under the first advertisement, until the time fixed for the sale in the second, and then under that advertisement the sale was adjourned to the 29th of May. On that day the property was put up for sale by the sheriff. William A. Boyd, one of the complainants, who was acting for his wife, the other complainant, was present with the complainants' solicitor. There were three or four bids, the last being one of $12,000, made by the solicitor. When it was made, Mr. Boyd, in the hearing of the persons present at the sale, inquired whose it was, and on being informed that it was made for him, he promptly and decidedly openly repudiated it, and refused to acknowledge or be bound by it. The solicitor admits that he had no authority at all, to bid at the sale for his clients. On Mr. Boyd's repudiating the bid, it was withdrawn, and the sale thereupon fell through. It was re-advertised to take place on the 6th day of November, 1873, and the property was then put up and sold to Peter H. Beckman, for $7000, a sum $3000 or $4000 less than the amount due on the complainants' mortgage, which was the first mortgage on the premises. No complaint is made that this sale was in any respect illegal, but the petitioner, who is the holder of the second mortgage, askes that it may be set aside, on the ground of inadequacy of price, and surprise.

It is not claimed that any obligation has arisen as against the complainants or their solicitor, from the bid of $12,000 at the first sale. Inadequacy of price alone, unless it be so gross as to lead to the presumption of fraud, is not a sufficient reason for setting aside such a sale. There is no evidence that the price in this case was inadequate. The premises are six city lots, with a school-house upon them. It is evident that efforts which the society had made to sell the property to the public authorities of Jersey City, within whose limits it is, were futile. For the special use for which the building was erected, and to which it appears to have been adapted, there was no sale for it. To be converted into a dwelling-house, the purchaser swears, and he is not contradicted, it would not be worth more than from $1000 to $2000, and the lots are valued at about $800 a piece. At these estimates the property cannot be regarded as having been greatly sacrificed, especially when the municipal assessments upon it, which amount to from $1000 to $1500, which the purchaser must pay, are taken into account. The actual cost of such a building, erected for a special use, would not be a guide in determining as to adequacy of price at a sale under execution.

But it is insisted that between the price bid for the property at the first sale and the price which it brought at the second, there is such a difference as of itself to lead to the conclusion that the price at which the property was sold was grossly inadequate. In the first place, the difference is not so great as to induce such a conclusion; and in the next place, it is quite evident that at the first sale, the first bid, which was $10,000, was made by the complainants' solicitor after Mr. Boyd had refused to make it, or any such bid. When it was made, the latter supposed the solicitor had made it on his own account. Another bid of $11,000 was announced, but whether it was made bona fide or not, does not appear. It was followed by the bid of $12,000. When that was withdrawn, no bidder claimed the benefit of his bid. If any person had bona fide bid $11,000 or any less sum, he did not claim the benefit of it. The bidding at the first sale therefore furnishes no cri-

terion of the value of the property. Besides, no witness swears that he believes a higher price could be got for the property on a re-sale, nor does any one swear that in his judgment it was sacrificed.

Was that sale a surprise upon the petitioner? His claim that it was so is based upon the allegation that he learned soon after the first sale, from Mr. Lockle, the president of the society, who was there, that the property had been sold at that sale for $12,000. Mr. Lockle, who was sworn as a witness for him however, does not say that he made that or any such statement to him. The petitioner appears to have given his claim and interest in the suit no attention whatever. He did not lay his mortgage before the master, but chose to withhold it. He paid no attention to any advertisement of the sale. He did not attend the first sale. Although if the property had been sold at $12,000, as he professes to have understood it did, he would have been entitled to the surplus of the proceeds after paying the amount due the complainants, yet he admits he never looked after it at all. Not only does it appear that he gave the sale no attention, but he does not swear that he would have attended the second sale had he known that the property was to be sold at that time; nor that he ever intended to bid on the property; nor that in his opinion it was sacrificed; nor that he is willing to give more for it than the sum it sold for; nor that he believes a greater price than that could be got on a re-sale. Nor does he say, nor does it appear, that he expects in any way to reap any advantage from a re-sale, should it be ordered. He is not entitled to the intervention of this court in the premises.

The motion is denied, and the petition dismissed, with costs.